UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

                      REPORT AND RECOMMENDATION

vs.

Wayne Robert Dahl,
a/k/a Stu

        Defendant.            Crim. 05-302 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant to Suppress Evidence from a Search.

A Hearing on the Motions was conducted on October 20, 2005, at which time, the Defendant appeared personally, and by Manny K. Atwal, Esq., and the Government appeared by Steven L. Schleicher, Assistant United States Attorney. For reasons which follow, we recommend that the Defendant's Motion to Suppress be denied.

## II. Factual Background

The Defendant has been charged with two (2) Counts of distribution of methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1) and (b)(1)(C); one (1) Count of distribution of methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1) and (b)(1)(B); and one (1) count of possession with intent to distribute methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1), and (b)(1)(B). The events which gave rise to the pending charges are alleged to have occurred on various dates between June 29, 2005, and August 11, 2005, in this State and District.

The Defendant has moved to Suppress evidence obtained during the execution of a Search Warrant at the Defendant's residence, in his vehicles, and on his person, on August 11, 2005. No testimony was adduced at the Hearing on the Defendant's Motions, and therefore, we limit our consideration to the "four corners" of the Search Warrant and Supporting Affidavit, as complemented by the parties joint Stipulation. See Docket No. 20.

## III. Discussion

A.  Standard of Review. In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause

exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband. Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996). In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993). For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also, Ornelas v. United States, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999). In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001),

cert. denied, 534 U.S. 1084 (2002). Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. Illinois v. Gates, supra at 236.

    B.    Legal Analysis. The Defendant has asked us to review the Search Warrant, which was executed on August 11, 2005, at the Defendant's residence at 3370 191st Lane NW, in Oak Grove, Minnesota, in order to determine whether the Warrant was supported by probable cause, or contained any other facial defects. The Search Warrant authorized a search for controlled substances; primary containers used to store controlled substances; dispensing equipment and drug paraphernalia related to the use and distribution of controlled substances; books and records, which pertain to narcotics transactions and the concealment or expenditures of monies; firearms; electronic equipment that generate or store records of sale or distribution of said controlled substances; United States currency and other items which may constitute

proceeds from the sale of controlled substances; items which show occupancy of the searched residence; and items which depict drug related activities. The Search Warrant also authorized a search of the Defendant's person, and two (2) vehicles, including a black Lincoln Mark VIII, bearing Minnesota licence plates numbered "LZA-282," and a Black Cadillac, bearing Minnesota licence plates numbered "GXP-022." See Application for Search Warrant and Supporting Affidavit, Government Ex. 1.

In support of the Search Warrant Application, Patrick Nelson ("Nelson"), who is a Detective with the Anoka County Sheriff's Office, and who is currently assigned to the Anoka/Hennepin Drug Task Force ("AHDTF"), submitted an Affidavit which detailed the events which caused him to suspect evidence of criminal activity at the Defendant's residence. According to the Affidavit, in July of 2005, Detective Jeff Baker ("Baker"), who is with the Sherburne County Sheriff's Office, advised Nelson that a Confidential Informant ("CI") had purchased methamphetamine from a male known as "Stu." Baker set up a deal in which the CI would purchase methamphetamine from "Stu." After the deal, detectives followed "Stu" to the residence located at 3370 191st Lane NW in Oak Grove. After further investigation,

Baker was able to identify "Stu" as the Defendant Wayne Robert Dahl, who resided at 3370 191st Lane NW.

In July of 2004, an undercover police officer, Travis Bolles ("Bolles"), who is assigned to the AHDTF, met the Defendant at the American Legion in Big Lake, Minnesota, during the evening hours. At the meeting, Bolles purchased methamphetamine from Dahl, and arranged to complete additional purchases in the future. Dahl provided Bolles with a telephone number, and the name "Stu," on a White Castle wrapper. Bolles later identified the person he had met as the Defendant from a drivers license photograph. The Defendant was observed driving off in a black Lincoln Mark VIII, with Minnesota license plates numbered "LZA-282".

On July 18, 2005, Bolles contacted the Defendant and agreed to meet at a predetermined location in order to purchase additional methamphetamine. At the meeting, which was recorded, Bolles entered the Defendant's black Cadillac Eldorado, and purchased a substance that field tested as methamphetamine from the Defendant, using prerecorded United States currency. The Defendant was observed driving a Cadillac Eldorado, with Minnesota license plates numbered "GXP-022," to and from that transaction.

On July 29, 2005, Bolles contacted the Defendant and placed an order for one (1) pound of methamphetamine. The Defendant informed Bolles that the pound would cost $16,000.00 and they discussed setting up the transaction on August 2 or 3, 2005.

On August 3, 2005, Bolles received a phone call from the Defendant, but Bolles was unable to take the call at that time. Bolles returned the Defendant's call, and informed the Defendant that it would take additional time to acquire the $16,000.00. The two agreed to set up the exchange during the following week. The meeting was scheduled for August 9, 2005.

On August 9, 2005, Bolles confirmed the transaction details with the Defendant. Detectives from the AHDTF watched the Defendant leave his residence at 3370 191st Lane NW, in Oak Grove, Minnesota, and drive to the Standing Room Only Bar in Oak Grove, Minnesota. Bolles entered the Defendant's Cadillac Eldorado, and was told that the Defendant had only eleven (11) out of the sixteen (16) ounces of methamphetamine, and that the rest was at the Defendant's residence. The Defendant returned to his house, called Bolles, and informed him that he wanted Bolles to raise up his shirt to ensure that Bolles was not wired, or carrying a gun. The Defendant did not return to meet with Bolles, and refused to answer his phone.

On August 10, 2005, the Defendant telephoned Bolles and told him that he was afraid to complete the deal as he feared Bolles was going to rip him off. They agreed to meet later to complete the transaction. On August 11, 2005, the day on which the warrant was issued and executed, Bolles spoke to the Defendant and confirmed that Bolles would purchase the remaining $5,000.00 worth of methamphetamine. In his supporting affidavit, Nelson states that Bolles would attempt to meet with the Defendant at a local gas station later that day to purchase additional methamphetamine in a controlled buy.

On this showing, we find that there was adequate probable cause to support the issuance of the Search Warrant. At the outset, we recognize that the initial information, which is contained in the Affidavit, was supplied by the CI. When probable cause for an arrest is based upon information provided by an informant, "'a key issue is whether that information is reliable.'" United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause."). As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'" Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information provided by the informant was reliable. See United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998). In turn, an informant is deemed reliable when his/her statements are corroborated by independent evidence. See United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also,

United States v. Koons, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we find that Nelson and Baker reasonably relied upon the information provided by the CI, because the information was corroborated by the arrangement, and conduct, of the subsequent controlled drug purchase from the Defendant by the CI. Furthermore, in support of the Warrant, Nelson averred to three other controlled buys, in which the Defendant sold, or attempted to sell methamphetamine, on each occasion, to Bolles, who was working undercover.  Furthermore, surveillance of Dahl revealed that, following the initial drug transaction, and prior to the second, Dahl traveled to the residence at 3370 191st Lane NW, in Oak Grove, Minnesota, and, on each occasion, the Defendant traveled to the predetermined locations either in his black Lincoln or black Cadillac, which were listed in the Search Warrant.  Some of the controlled buys were completed while in the actual vehicles themselves.  Finally,

during the third controlled buy, the Defendant advised that he still had additional methamphetamine back at his residence.

On this showing, we find that there was probable cause to search the residence at 3370 191st Lane NW, in Oak Grove, Minnesota, the black Cadillac, the black Lincoln, and the Defendant's person.  Specifically, the information provided, which was based on the investigation and surveillance of the Defendant in a series of controlled buys, established "a probability or substantial chance of criminal activity" occurring at those locations, and being committed by the Defendant.  See, United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"), quoting Illinois v. Gates, supra at 243-44 n. 13.

Although not addressed by either party, there is one anomaly in Nelson's Affidavit which warrants our attention.  In Nelson's recitation of the events on August 11, 2005, he avers as follows:

> On 8/11/05, Det. Bolles spoke to Wayne Dahl and confirmed that the two of them were going to meet later in which Det. Bolles was going to purchase $5,000 worth of Methamphetamine from Wayne Dahl.  Det. Bolles will attempt to get Dahl to meet at a local gas station near Dahl's residence in which detectives from the AHDTF will follow Dahl from his residence to the meet location.  Base [sic] on these actions, you affiant is requesting a

>    presumptive warrant only if Dahl leaves his house and
>    drives directly to a local gas station and exchanges 4 ounces
>    of methamphetamine with Det. Bolles for the $5,000 of
>    pre-recorded US Currency.

Government Exhibit 1, at Bates No. 000000004.

Unfortunately, the Record before us does not resolve, on any specific factual basis, the contingency for the issuance of the Warrant, namely, as attested by Nelson. We simply do not know whether the Defendant left his home on August 11, and proceeded to a gas station where he exchanged four (4) ounces of methamphetamine, with Bolles, for $5,000.00 in cash. However, the Defendant does not suggest that the Warrant in question was anticipatory and, in fact, the parties have stipulated that "Nelson relied upon the search warrant in good faith when he executed it and had no reason to doubt its validity."[1] Docket No. 20. Accordingly, we find, in the

---

[1] "An anticipatory search warrant should be upheld if independent evidence shows the delivery of contraband will or is likely to occur and the warrant is conditioned on that delivery." United States v. Walker, 324 F.3d 1032, 1038 (8th Cir. 2003), cert. denied, 540 U.S. 898 (2003), quoting United States v. Bieri, 21 F.3d 811, 815 (8th Cir. 1994), cert. denied, 513 U.S. 878 (1994), citing United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993). Here, Nelson had detailed the past controlled buys from the Defendant, which suggested ongoing drug trafficking over several years. The nexus between drug traffickers, and the storage of incriminating drug trafficking evidence in the home, has been well recognized in this Circuit.

As our Court of Appeals observed, in United States v. Hulett, 22 F.3d 779, 780 (8th Cir. 1994), "[f]ew places are more convenient tha[n] one's residence for use in
(continued...)

alternative, that the officers' reliance upon the Search Warrant was reasonable and, even if the Warrant were anticipatory, the evidence seized should not be suppressed. See United States v. NcNeil, 184 F.3d 770, 775 (8th Cir. 1997), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).

The Defendant draws no other fatal deficiencies in the Warrant that was issued, and our independent review did not disclose any. Accordingly, we find no basis to sustain a substantive challenge to the Warrant at issue, and we recommend that the

---

[1](...continued)
planning criminal activity and concealing fruit of a crime." See also, United States v. Etheridge, 168 F.3d 495, 1998 WL 792467 at **1 (8th Cir., November 18, 1998)("Since it is well known that drug traffickers routine keep packaging equipment, ledgers, and other incriminating items in their living quarters, the affidavit provided sufficient reason to believe that [the defendant's] residence would contain evidence of criminal activity."); United States v. Formaro, 152 F.3d 768, 770 n. 2 (8th Cir. 1998); United States v. Premises Known as 6040 Wentworth Ave. South Mpls., 1996 WL 260745 at * 4 (D. Minn. 1996), aff'd, 123 F.3d 685 (8th Cir. 1997); United States v. Luloff, 15 F.3d 763,768 (8th Cir. 1994); see also, United States v. Walker, 324 F.3d 1032, 1038 (8th Cir. 2003), cert. denied, 540 U.S. 898 (2003)(detailing nexus between residences of drug traffickers and indicia of drug crimes, inclusive of "guns, money, and pagers," and "documents that might identify the owner or renter of the apartment to establish constructive possession" of inclupatory evidence).

Given the parties' Stipulation we presume any contingencies for the execution of the Warrant were satisfied, and we note that the remaining portions of the Warrant detail a factual basis to believe that drugs, and indicia of drug offenses, would be found in the Defendant's home, which is further underscored by the issuing Judicial Officer's express authorization of a nighttime search of that home, the person of the Defendant, and two of his automobiles.

Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 15] be denied.

Dated:  October 25, 2005         *s/Raymond L. Erickson*
                                                      Raymond L. Erickson
                                                      CHIEF U.S.  MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 14, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 14, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.